**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| RAYMOND J. TRICE, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> UNKNOWN PEMISCOT COUNTY ) <br> SHERIFF, et al., ) <br> ) <br> Defendants. ) | No. 1:24-cv-00084-SEP |

**MEMORANDUM AND ORDER**

Before the Court is Raymond J. Trice's Application to Proceed in District Court Without Prepaying Fees or Costs, Doc. [2]. That motion is granted, but for the reasons set forth below, the case is dismissed.

**28 U.S.C. § 1915(b)(1)**

Under 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20% of the greater of (1) "the average monthly deposits in the prisoner's account," or (2) "the average monthly balance in the prisoner's account for the prior six-month period." 28 U.S.C. § 1915(a)(2). After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20% of the preceding month's income credited to his account. *See id*. The agency having custody of the prisoner will forward the monthly payments to the Clerk of Court each time the amount in the account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff did not submit a certified inmate account statement with the application as required by 28 U.S.C. § 1915(a)(2). Thus, the Court will assess an initial partial filing fee of $1.00, finding that reasonable based upon the information before the Court. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997). Any claim that Plaintiff is unable to pay $1.00 must be supported by a certified copy of his inmate account statement.

**FACTS AND BACKGROUND**

Plaintiff is currently incarcerated in the Eastern Reception, Diagnostic, and Correctional Center (ERDCC), but his claims arise from events that occurred when he was a pretrial detainee

at the Pemiscot County Jail.  Plaintiff brings claims under 42 U.S.C. § 1983 against the Pemiscot County Sheriff; Nurse Christy Unknown; Jail Administrators Chad Nixon, Matt Greer, and "Josh (Babst) - last name unknown";[1] Shift Sergeants Nikita Bower and Terry Paul; and an unknown Jail Doctor.  *See* Doc. [1] at 2-4.  Plaintiff sues Nurse Christy in her individual and official capacities, *id*. at 2, but the remaining defendants in their official capacities only.  *Id*. at 3-4.

In his statement of claim, Plaintiff writes: "While in custody in Pemiscot County Jail during 2023 and 2024 the following claims occurred."  *Id*. at 6.  Plaintiff then identifies the following four claims for relief.

*Claim 1*.  Plaintiff's glasses were lost during his transfer to the Jail.  *Id.*  He notified "intake" upon his arrival and submitted medical request forms per Jail policy.  *Id.*  Plaintiff continued using that process for weeks to months with no response.  *Id.*  He told his defense attorney that he did not have his glasses and could not read his plea agreement.  *Id.*  His attorney's investigator "inquired as to the delay in the Facility getting [Plaintiff's] glasses replaced and was denied any information regarding [his] medical care while in custody or the release of grievances to be released to [his] Attorney's office."  *Id.*

*Claim 2*.  Plaintiff submitted a medical request to receive 16 mg of Flomax daily while in custody.  *Id.* at 7.  He states he had prostate issues and was supposed to receive "8 mg or two 4 mg Flomax, twice daily a total of 16 mg daily," but "was only given 4 mg once in morning and once at night a total of 8 mg."  *Id.*  Plaintiff "made Nurse Christy aware of this multiple times and requested the dosage be corrected" because without it he suffers bladder pain, abdominal pain, "lower back issues," liver pain, blood poisoning, severe weight loss, severe migraines, "spiking blood pressure from the pain," and "yellowing of my skin dehydration."  *Id.*  Plaintiff asked "to see the doctor and the dosage to be corrected multiple times," he "self declared to [Sergeants] Nikita, Terry," and he submitted grievances to "all Jail Administrators" concerning the Flomax dosage.  *Id.*  The grievances he submitted to Babst, Nixon, and Greer were "either not answered or reviewed by [Sergeants] with instructions to resubmit with Jail Administrators." *Id.* at 8.  Plaintiff's attorney's investigator tried to get copies of grievances and medical requests, but his requests were repeatedly denied.  *Id.*

---

[1] Plaintiff uses different spellings for Defendant Babst's surname.  The Court will refer to him as "Babst," which is the first spelling Plaintiff used.

Nurse Christy arranged a doctor's visit for Plaintiff, and Plaintiff "explained [his] issue." *Id.* Nurse Christy said: "I set up your meds [you're] getting what you need." *Id.* Plaintiff "responded in that no in fact I was not." *Id.* The doctor said that Nurse Christy handles medications for the Jail and could change the dosage. Plaintiff does not allege that the doctor recommended a change in Plaintiff's Flomax dosage or opined that it was too low. The doctor told Plaintiff to seek treatment when he arrived at the Department of Corrections because he was "not equipped to further [Plaintiff's] care beyond medication." *Id.* Plaintiff does not allege that he required care beyond medication. Plaintiff's attorney's office communicated with Nurse Christy and "Jail Staff and Administrators" and were told they needed a court order to release information. *Id.* at 9.

*Claim 3*. Plaintiff used the Jail's grievance procedure to communicate "with Jail Administrators with no reply or interaction or instruction," which caused "unnecessary delay and harm to [his] person as [he] submitted through [their] administrative requirements of inmates." *Id.*. Plaintiff does not explain what he means by "harm" in this context. He writes: "The Followed response of telling my Federal Attorneys office to get a court order violates [their] own policy and my rights. [They're] deliberately or inadvert[e]ntly ignoring or purposefully ignoring my request caused mental as well as physical harm to my person." *Id.*

*Claim 4*. Plaintiff alleges he repeatedly told Bower and Paul "about [his] pains and lack of glasses," and they told him they left notes for "the Nurse" and Nixon, Babst, and Greer. *Id.* at 10. Plaintiff states that "after exhausting all remedies available I gave up." *Id.* He claims he was in pain daily and was mentally anguished, but he does not identify the pain with specificity or attribute it to his Flomax dosage. He states he remained in bed until his pain subsided and put himself "into routine to live on less" until he arrived at the Department of Corrections. *Id.*

Plaintiff seeks $100,000 in damages, and he states he wants "the Court to order the jail to review [its] policy and follow it." *Id.* at 12.

## LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (cleaned up) (quoting *Iqbal*, 556 U.S. at 678); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court must accept factual allegations in the complaint as true, but is not required to "accept as true any 'legal conclusion couched as a factual allegation'") (quoting *Iqbal*, 556 U.S. at 678).

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that, "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Still, even pro se complaints must "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone*, 364 F.3d at 914-15 (federal courts not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). And "procedural rules in ordinary civil litigation" need not be "interpreted so as to excuse mistakes by those who proceed without counsel." *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## DISCUSSION

Plaintiff sues all Defendants in their official capacities and identifies them as employees of the Pemiscot County Sheriff's Department or the Pemiscot County Jail. "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Consequently, Plaintiff's official capacity claims seek to impose liability on Pemiscot County, which as a local governing body, cannot be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately

4

indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (quoting *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016)).

Plaintiff references a policy, but he alleges that Defendants wrongfully failed to follow it, not that any constitutional violation resulted from the policy itself. Nor does Plaintiff sufficiently allege that a constitutional violation resulted from an unofficial custom or deliberately indifferent failure to train or supervise. And to the extent Plaintiff seeks to impose liability on a Defendant for failing to follow a jail policy, such allegations do not state a claim under § 1983. *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy."). Finally, even if Plaintiff's official capacity claims could be construed as claims against the Jail itself or against the Pemiscot County Sheriff's Department, such claims are legally frivolous. *See Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("[C]ounty jails are not legal entities amenable to suit."); *De La Garza v. Kandiyohi Cnty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (cleaned up) (quoting *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit."). Accordingly, Plaintiff's official capacity claims against all Defendants must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Plaintiff's only remaining claim is his claim against Nurse Christy in her individual capacity. Plaintiff claims Nurse Christy was deliberately indifferent to his serious medical need when she failed to give him a 16 mg dosage of Flomax while he was a pretrial detainee at the Jail. The Eighth Amendment's "prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." *Smith-Dandridge v. Geanolous*, 97 F.4th 569, 575 (8th Cir. 2024) (quoting *A.H. v. St. Louis Cnty.*, 891 F.3d 721, 726 (8th Cir. 2018)). "A pretrial detainee's deliberate indifference claim is governed by the Fourteenth Amendment[,] which extends to detainees at least the same protections that convicted prisoners receive under the Eighth Amendment." *Id.* (alteration in original) (quoting *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021)). "An individual's status as a pretrial detainee or arrestee does not affect [the] analysis of deliberate indifference." *Id.* (citing *Barton v. Taber*, 908 F.3d 1119, 1123-24 (8th Cir. 2018)).

"The deliberate indifference standard has two components: an objective component and a subjective component." *Thomas-El v. Francis*, 99 F.4th 1115, 1117 (8th Cir. 2024). "Objectively, the medical need must be serious." *Beard v. Falkenrath*, 97 F.4th 1109, 1118 (8th

5

Cir. 2024). "And subjectively, a prison official must have 'actually known about, but deliberately disregarded' the need, which is a mental state comparable to criminal recklessness." *Id*. (cleaned up) (first quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997); then citing *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 360 (8th Cir. 2023)).  Assuming he had an objectively serious need, Plaintiff does not allege the subjective component.

Plaintiff alleges he was given an 8 mg dose of Flomax instead of his preferred 16 mg.  Plaintiff's allegations do not establish that Nurse Christy recklessly disregarded a known, excessive risk of serious harm to his health or safety.  Instead, his allegations establish that Nurse Christy exercised her professional judgment to determine the proper Flomax dosage.  Plaintiff even acknowledges that Nurse Christy set up a meeting with a doctor who heard Plaintiff's complaints but apparently did not order any change to Nurse Christy's recommend dosage.  Plaintiff's allegations establish a disagreement with Nurse Christy's treatment decision, not that Nurse Christy's mental state was comparable to criminal recklessness.  "For a claim of deliberate indifference, 'the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)).  For the same reason, to the extent Plaintiff alleges that Nurse Christy was negligent or committed medical malpractice, those allegations to not state a claim under § 1983.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, Doc. [2], is **GRANTED**.

**IT IS FURTHER ORDERED** that, within **thirty (30) days** of the date of this order, Plaintiff must pay an initial filing fee of $1.00.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it:  (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice.  A separate order of dismissal will be entered.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel, Doc. [3], is **DENIED** as moot.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 31st day of October, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE